[Cite as *Heskett Ins. Agency, Inc. v. Braunlin*, 2011-Ohio-6100.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| HESKETT INSURANCE AGENCY, INC., | : | Case No. 11CA3234 |
| | : | |
| and | : | |
| | : | DECISION AND |
| HESKETT INSURANCE AGENCY, INC. | : | JUDGMENT ENTRY |
| d/b/a WEISENBERGER INSURANCE | : | |
| SERVICE, | : | |
| | : | |
| Plaintiffs-Appellees | : | |
| | : | |
| v. | : | **RELEASED 11/16/11** |
| | : | |
| ERIC BRAUNLIN, | : | |
| | : | |
| and | : | |
| | : | |
| FIRST CAPITAL INSURANCE | : | |
| SERVICES, INC., | : | |
| | : | |
| Defendants-Appellants. | : | |

_____

APPEARANCES:

Thomas M. Spetnagel and Paige J. McMahon, SPETNAGEL & McMAHON LAW OFFICE, Chillicothe, Ohio, for appellants.

Thomas W. Breidenstein, THE LAW OFFICES OF THOMAS W. BOSSE, PLLC, Crestview Hills, Kentucky, for appellees.
_____

Harsha, P.J.

{¶1}     Eric Braunlin appeals the trial court's enforcement of a settlement agreement he entered into with Heskett Insurance Agency, Inc. and Heskett Insurance Agency, Inc., d.b.a. Weisenberger Insurance Service (collectively "Heskett"). The trial court found that Braunlin breached the agreement by making four late payments and awarded Heskett liquidated damages. Braunlin contends that three of these payments were timely because he "delivered," i.e. mailed, them prior to the dates specified in the

agreement. However, the agreement clearly states that Braunlin must "timely pay" Heskett "on or before" certain dates – terminology that necessarily requires both delivery and receipt of payments by those dates. Thus, the trial court did not err in finding that Braunlin breached by making these payments late.

{¶2} Next, Braunlin argues that Heskett cannot enforce the liquidated damages clause in the settlement agreement on the fourth payment Heskett claims was late due to Heskett's "unclean hands," i.e. it acted in bad faith by trying to penalize Braunlin for using the mail which was a timely method of payment. However, the "clean hands" doctrine does not apply because Heskett never invoked the trial court's equitable jurisdiction. Furthermore, we have already determined that Braunlin made these payments late because the mailbox rule did not apply. Because Heskett merely sought to enforce its right to damages under the provisions of the settlement agreement, the trial court did not abuse its discretion when it did not apply the unclean hands doctrine.

{¶3} Braunlin also contends that the trial court improperly enforced the "liquidated damages" clause in the settlement agreement because the damages constitute a penalty. Heskett's loss from Braunlin's failure to make timely payments can easily be calculated with reference to the legal rate of interest and the period of default. Thus damages were not uncertain in amount or difficult to prove. The "liquidated damages" clause, which doubles late payments, is an unenforceable penalty. We therefore reverse the trial court's award of liquidated damages. And because that decision renders moot Braunlin's contention that the trial court erred in finding that these damages were non-dischargeable in bankruptcy, we need not address it.

I. Facts

{¶4}    Heskett filed suit against Braunlin, one of its former insurance agents, and First Capital Insurance Services, Inc. ("First Capital"), a corporation formed by Braunlin. As part of its employment arrangement with Braunlin, Heskett was to receive 50% of Braunlin's commissions on the sale of insurance products. Heskett alleged that Braunlin used his position to sell insurance products to its new and existing customers through First Capital and other brokers, misappropriating Heskett's share of the commissions. Braunlin filed a counterclaim, alleging that Heskett breached its obligations under the parties' arrangement.

{¶5}    Prior to trial, the parties orally entered into a settlement agreement. The parties later reduced their agreement to a writing the trial judge and parties signed. Braunlin agreed to "timely pay to [Heskett] the sum of $25,000.00" in a series of eight payments of varying amounts. The agreement further outlined the form of payment and location for delivery. The parties agreed that Braunlin would pay liquidated damages on each late payment in an amount equal to the amount of the late payment. Furthermore, the parties agreed that the settlement was "of a debt which is not subject to discharge in bankruptcy under Section 11 USC Section 523 (a)(2) and 523 (a)(4)[.]" The parties also agreed to file an "entry of dismissal with prejudice and satisfaction of judgment" after Braunlin paid all money owed under the settlement agreement. The trial court issued an "Entry of Settlement" in which the court recognized that the parties entered into a settlement agreement resolving all issues and retained jurisdiction to enforce the terms of the agreement until the parties filed a dismissal entry.

{¶6}    In January 2008, Heskett filed a motion for a judgment enforcing the agreement. Heskett alleged that Braunlin made several late payments:

> (1) he failed to pay $1,500 on or before June 30, 2006; instead, payment was received a day or two late; (2) he failed to pay $2,000 on or before December 31, 2006; payment was received January 3, 2007; (3) he failed to pay $2,500 on or before September 30, 2007; payment was received October 1, 2007; and (4) he has yet to pay the final payment of $5,000, which was due on or before December 31, 2007.

Heskett asked the trial court to award it $16,000 – $5,000 for the December 31, 2007 payment and $11,000 in liquidated damages (i.e. $1,500 + $2,000 + $2,500 + $5,000). In addition, Heskett requested attorney's fees and expenses for filing its motion. Subsequently, Braunlin sent the $5,000 payment, and Heskett reduced its request for relief by this amount.

{¶7} Braunlin filed a cross-motion for a judgment enforcing the settlement agreement, requesting an entry of dismissal with prejudice and satisfaction of judgment on the grounds that Heskett received full payment of the $25,000. Braunlin argued that three of the four payments at issue were not late because they were "delivered," i.e. mailed, before the dates outlined in the settlement agreement. While Braunlin conceded that the final payment of $5,000 was late, he contended that Heskett's unclean hands prohibited its recovery of liquidated damages for that payment. Braunlin also argued that the liquidated damages clause constituted an unenforceable penalty.

{¶8} After holding an evidentiary hearing, the trial court issued its Final Judgment Entry Enforcing the Settlement Agreement, which sustained Heskett's motion in part and overruled Braunlin's cross-motion. The court found that the mailbox rule did not apply to the payment schedule and that payments under the agreement "were due in the hands of [Heskett] on or before the due dates listed in the Agreement." In addition, the court found that the "agreed-upon and Court-approved liquidated damages [were] proper damages under the terms of the Settlement Agreement, and [did] not

constitute unenforceable penalties." The court found that Braunlin made the four payments at issue late and ordered him to pay Heskett $11,000 in liquidated damages. In addition, the court found that this amount was not subject to discharge in bankruptcy under the terms of the settlement agreement. The court denied Heskett's request for attorney fees and expenses as "premature." Braunlin appealed. However, because Heskett's request for attorney's fees and expenses remained undecided, we dismissed for lack of a final order. *Heskett Ins. Agency Inc. v. Braunlin*, Ross App. No. 08CA3069, 2009-Ohio-1400. Subsequently, the trial court denied Heskett's request, and this appeal followed.

## II.  Assignments of Error

{¶9}   Braunlin assigns the following errors for our review:

THE TRIAL COURT ERRED AS A MATTER OF LAW IN SUSTAINING PLAINTIFFS-APPELLEES' MOTION FOR JUDGMENT ENFORCING THE SETTLEMENT AGREEMENT IN PART AND OVERRULING DEFENDANT-APPELLANT'S CROSS-MOTION FOR JUDGMENT ENFORCING THE SETTLEMENT AGREEMENT.

THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT THE PENALTY IMPOSED BY THE LIQUIDATED DAMAGES CLAUSE WAS NON-DISCHARGEABLE IN BANKRTUPCY UNDER 11 U.S.C. 523(A)(2) AND (A)(4).

## III.  Motion to Enforce Settlement Agreement

{¶10}  In his first and second assignments of error, Braunlin contends that the trial court erred in various ways when it ruled on the motion and cross-motion to enforce the settlement agreement. The parties disagree about the standard of review we should apply to these arguments. Heskett contends that we should apply an abuse of discretion standard because the settlement agreement constitutes the trial court's own order and courts have discretion to interpret and clarify their own orders. (Appellees' Br.

7).

{¶11} However, a settlement agreement is a contract designed to prevent or end litigation. *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502, 1996-Ohio-158, 660 N.E.2d 431. Thus, when interpreting a judgment that adopts a settlement agreement, courts must apply general rules of contract interpretation. See *Martin v. Howard*, Lawrence App. No. 07CA27, 2009-Ohio-67, at ¶7, citing *Pierron v. Pierron*, Scioto App. Nos. 07CA3153 & 07CA3159, 2008-Ohio-1286, at ¶7. And "[t]he standard of review applicable to a ruling on a motion to enforce a settlement agreement depends upon the issues disputed * * *." *Barstow v. O.U. Real Estate, III, Inc.*, Athens App. No. 01CA49, 2002-Ohio-4989, at ¶36. Below, we set forth the appropriate standard of review for each issue raised in Braunlin's appeal.

## A. Time for Payment

{¶12} Braunlin contends that the trial court misinterpreted the clear terms of the settlement agreement regarding the time for payment. The issue of whether a contract is ambiguous presents a question of law we review de novo. *Martin* at ¶8. If the contract is clear and unambiguous, both the trial court and this court must apply it as written, i.e. as a matter of law. See *Latina v. Woodpath Development Co.* (1991), 57 Ohio St.3d 212, 214, 567 N.E.2d 262; *Martin* at ¶8. But should we determine an ambiguity exists, we afford the trial court discretion to clarify the ambiguity. *Martin* at ¶8.

{¶13} In construing a written instrument, the primary and paramount objective is to ascertain the intent of the parties so as to give effect to that intent. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920.

Common words must be given their ordinary meaning unless manifest absurdity would result or some other meaning is clearly evidenced from the face or overall contents of the written instrument. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 374 N.E.2d. 146, at paragraph two of the syllabus.

{¶14}  Braunlin contends that under the terms of the settlement agreement, he was obligated to "deliver," i.e. mail, payments to Heskett on or before the dates specified in the agreement. Heskett argues that under the agreement, any payment is late unless Heskett received it on or before the specified dates. Neither party appears to dispute that (1) Heskett received all four payments at issue after the dates listed in the agreement, and (2) Braunlin mailed three of the four payments at issue before the dates specified in the agreement. Thus, if we accept Braunlin's interpretation of the contract, he made one late payment. If we accept Heskett's interpretation of the contract, Braunlin made four late payments.

{¶15}  The settlement agreement provides:

Defendant, Eric Braunlin shall timely pay to [Heskett] the sum of $25,000.00 in accordance with the following schedule:

I. <u>2006</u>

    a.  The sum of $7,500.00 on or before May 15, 2006.
    b.  The sum of $1,500.00 on or before June 30, 2006.
    c.  The sum of $1,500.00 on or before September 30, 2006.
    d.  The sum of $2,000.00 on or before December 31, 2006.

II. <u>2007</u>

    a.  The sum of $2,500.00 on or before March 30, 2007.
    b.  The sum of $2,500.00 on or before June 30, 2007.
    c.  The sum of $2,500.00 on or before September 30, 2007.
    d.  The sum of $5,000.00 on or before December 31, 2007.

The agreement further provides that:

> All payments set forth above shall be made by certified check payable to Heskett Insurance Agency, Inc.  The first such payment shall be delivered to M. Michele Fleming, attorney for Heskett * * *, 105 E. Fourth Street, Cincinnati, Ohio 45202.  All subsequent payments shall be payable to Heskett Insurance Agency, Inc. and delivered to the offices of [Heskett] located at 110 E. Main Street, Hillsboro, Ohio 45133.

{¶16}  In interpreting these provisions, Braunlin emphasizes the agreement's use of the term "delivered."  He contends that delivery is a transfer of possession that requires intent to deliver coupled with an act of relinquishment of custody and control.  According to Braunlin, his act of placing the payments to Heskett in the mail qualifies as delivery.  Braunlin contends that the common law mailbox rule applies so that his payments were effective upon sending.

{¶17}  However, in the settlement agreement the term "delivered" is used only in reference to the physical location where Braunlin was to make the payments.  The plain language of the agreement provides that Braunlin "shall *timely* pay * * * [a specified sum of money] *on or before* [a specified date]."  (Emphasis added).  The term "pay" means: "To discharge a debt by tender of payment due; to deliver to a creditor the value of a debt, either in money or in goods, for his acceptance.  To compensate for goods services or labor."  Black's Law Dictionary (Abridged 6th Ed. 1992) (internal citation omitted).  By this definition, the term "pay" necessarily involves both delivery and receipt.  See generally *Estate of Hart v. Hart*, Franklin App. No. 07AP-504, 2007-Ohio-6861, at ¶14.  Therefore, the trial court did not err in finding that under the clear and unambiguous terms of the settlement agreement, Braunlin's payments were late unless Heskett received them on or before the specified dates.  Because Heskett received the four payments at issue after the specified dates, the trial court correctly determined that

Braunlin breached the settlement agreement on those occasions.

### B.  Clean Hands

**{¶18}**  Although Braunlin admits he made the final payment under the settlement agreement late, he contends that Heskett's "unclean hands" prohibit it from pursuing liquidated damages for that payment.  The equitable "clean hands" doctrine provides that a party cannot come to court seeking equity where that party engaged in "reprehensible conduct with respect to the subject-matter of his suit."  *Kinner v. Lake Shore & M. S. Ry. Co.* (1904), 69 Ohio St. 339, 69 N.E. 614, at paragraph one of the syllabus.  Generally, actions for monetary relief are legal, not equitable.  *O'Brien v. Ohio State Univ.*, 139 Ohio Misc.2d 36, 2006-Ohio-4346, 859 N.E.2d 607, at ¶58, fn. 3, citing *Feltner v. Columbia Pictures Television, Inc.* (1998), 523 U.S. 340, 352, 118 S.Ct. 1279, 140 L.E.2d 438 and *City of Monterey v. Del Monte Dunes at Monterey, Ltd.* (1999), 526 U.S. 687, 710-711, 119 S.Ct. 1624, 143 L.E.2d 882.

**{¶19}**  We review a trial court's decision on whether a party has clean hands for an abuse of discretion.  *Muskingum Valley Bancshares, Inc. v. Tonti* (Mar. 23, 1997), Washington App. No. 95 CA 31, 1997 WL 214798, at *15.  The phrase "abuse of discretion" implies that the court's attitude was unreasonable, arbitrary, or unconscionable.  *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.

**{¶20}**  Braunlin's "unclean hands" argument is premised on his contention that he timely made payments under the settlement agreement except for the last payment.  Each time Heskett received a payment it deemed late, it sent Braunlin a letter informing him of that fact.  After Heskett received a third payment it deemed late, it informed Braunlin that it would assess liquidated damages for his breach.  As noted above,

Braunlin contends that these three payments were not late because he mailed them prior to the dates specified in the settlement agreement. Braunlin argues that Heskett acted in bad faith by trying to "penalize him for using the mail" in making these payments. (Appellant's Br. 10). Therefore, Braunlin argues that even though he made the final payment late, Heskett's unclean hands prevent it from pursuing liquidated damages for that payment under the settlement agreement.

{¶21} However, Heskett sought and received monetary damages for Braunlin's breach of the settlement agreement – a legal remedy, not an equitable remedy. Because the trial court's equitable jurisdiction was not invoked, Braunlin's reliance on the equitable "clean hands" doctrine is misplaced. *O'Brien*, supra, at ¶58, fn. 3, citing *Civil Serv. Personnel Assn., Inc. v. City of Akron* (1976), 48 Ohio St.2d 25, 356 N.E.2d 300. Even if the "clean hands" doctrine was applicable, we have already concluded that Braunlin was late in making the payments at issue. Heskett's assertion of its right under the terms of the settlement agreement to damages for Braunlin's breach can hardly be deemed "reprehensible conduct." Therefore, the trial court did not act unreasonably, arbitrarily, or unconscionably when it failed to apply the unclean hands doctrine.

## C. Liquidated Damages

{¶22} Braunlin contends that the "liquidated damages" clause in the settlement agreement actually constitutes an unenforceable penalty. Penalty provisions in contracts are "invalid on public policy grounds because a penalty attempts to coerce compliance with the contract rather than represent damages which may actually result from the failure to perform." *Satterfield v. Adams Cty./Ohio Valley School Dist.* (Nov. 6, 1996), Adams App. No. 95CA611, 1996 WL 655789, at *7, citing *Lake Ridge Academy*

*v. Carney* (1993), 66 Ohio St.3d 376, 381, 613 N.E.2d 183. The issue of whether a contract clause provides for liquidated damages or an unenforceable penalty presents a question of law that we review de novo. *Lake Ridge Academy* at 380.

**{¶23}** "Whether a particular sum specified in a contract is intended as a penalty or as liquidated damages depends upon the operative facts and circumstances surrounding each particular case[.]" *Samson Sales, Inc. v. Honeywell, Inc.* (1984), 12 Ohio St.3d 27, 28-29, 465 N.E.2d 392. If a party challenges a stipulated damages provision, "the court must step back and examine it in light of what the parties knew at the time the contract was formed and in light of an estimate of the actual damages caused by the breach." *Lake Ridge Academy* at 382. "If the provision was reasonable at the time of formation and it bears a reasonable (not necessarily exact) relation to actual damages, the provision will be enforced." Id., citing 3 Restatement of the Law 2d, Contracts (1981) 157, Section 356(1).

**{¶24}** The Supreme Court of Ohio has devised the following test for courts to evaluate a stipulated damages clause:

> Where the parties have agreed on the amount of damages, ascertained by estimation and adjustment, and have expressed this agreement in clear and unambiguous terms, the amount so fixed should be treated as liquidated damages and not as a penalty, if the damages would be (1) uncertain as to amount and difficult of proof, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof.

*Jones v. Stevens* (1925), 112 Ohio St. 43, 146 N.E. 894, at syllabus.

**{¶25}** Here the settlement agreement provides that if Braunlin "fail[s] to meet any of the payments according to the schedule * * * then liquidated damages in an amount

equal to the amount owed on the due date of the payment shall be immediately assessed without further court action and shall be owed fully by [Braunlin]." In other words, each late payment is doubled. Braunlin contends that this clause violates the first prong of *Jones* because Heskett's damages could easily be determined by calculating the legal rate of interest for any period Braunlin was in default.

**{¶26}** Heskett implies that damages in this case are uncertain because we cannot know what amount a jury would have awarded had the case proceeded to trial (though Heskett speculates it would have been significantly greater than the settlement amount). Heskett misinterprets this prong of the *Jones* test. Under Heskett's interpretation, damages would always be uncertain in the case of settlement agreements because we cannot predict the outcome of a trial. However, under *Jones* we must ask what harm the stipulated damages were intended to rectify and whether damages from that harm were uncertain in amount and difficult to prove.

**{¶27}** In this case, the stipulated damages were intended to compensate Heskett for harm it would suffer if Braunlin made late payments. These damages are neither uncertain in amount nor difficult to prove. Braunlin's failure to make a payment when due would simply entitle Heskett to interest at the legal rate for the default period. Furthermore, a double payment assessed regardless of whether payment was a day late, or alternatively, years late, bears no relationship to the actual damages caused by Braunlin's failure to timely make a payment.

**{¶28}** Because damages in this case are certain and easy to prove, i.e. they can easily be calculated by applying the legal rate of interest to periods of default, the "liquidated damages" clause in the settlement agreement constitutes an unenforceable

penalty.  Therefore, the trial court erred when it enforced the clause and ordered Braunlin to pay Heskett $11,000 in liquidated damages.  However, Heskett may still prove compensatory damages, i.e. actual damages, for Braunlin's breach of the settlement agreement.  *Sheffield-King Milling Co. v. Domestic Science Baking Co.* (1917), 95 Ohio St. 180, 115 N.E. 1014, at syllabus.

{¶29}  Given our finding that the stipulated damages provision fails the first prong of the *Jones* test, we need not address Braunlin's claim that the provision also fails the second prong of the *Jones* test.  Furthermore, our disposition of this assignment of error renders Braunlin's second assignment of error moot, so we need not address it.  See App.R. 12(A)(1)(c).

{¶30}  Accordingly, we affirm the trial court's judgment to the extent that it finds that Braunlin breached the settlement agreement by making untimely payments and to the extent that it did not apply the "unclean hands" doctrine.  However, we reverse the trial court's judgment to the extent that it awards Heskett $11,000 in liquidated damages and remand the matter to the trial court to determine the amount of actual damages resulting from Braunlin's breach.

JUDGMENT AFFIRMED IN PART,
REVERSED IN PART,
AND CAUSE REMANDED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART and that the CAUSE IS REMANDED.  Appellants and Appellees shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Abele, J.:  Concurs in Judgment and Opinion.
McFarland, J.:  Concurs in Judgment Only.

For the Court

BY:  _____
William H. Harsha, Presiding Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**