[Cite as *Vail v. String*, 2019-Ohio-984.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 107112**

---

**ELIZABETH A. VAIL**

PLAINTIFF-APPELLEE/
CROSS-APPELLANT

vs.

**LINDSEY N. STRING**

DEFENDANT-APPELLANT/
CROSS-APPELLEE

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Common Pleas Court
Domestic Relations Division
Case No. DR-91-214748

**BEFORE:** E.A. Gallagher, J., Laster Mays, P.J., and Sheehan, J.

**RELEASED AND JOURNALIZED:** March 21, 2019

**ATTORNEYS FOR APPELLANT/CROSS-APPELLEE**

Deborah J. Michelson
David A. Kunselman
Miller Goler Faeges Lapine L.L.P.
1301 East 9th Street, Suite 2700
Cleveland, Ohio 44114-1835


**ATTORNEY FOR APPELLEE/CROSS-APPELLANT**

Jonathan A. Rich
Zashin & Rich Co., L.P.A.
Ernst & Young Tower
950 Main Avenue, 4th Floor
Cleveland, Ohio   44113


**ALSO LISTED**

**ATTORNEY FOR MCDONALD & COMPANY**

Henry V. Kerr
800 Superior Avenue
McDonald Investment Center
Cleveland, Ohio   44114


EILEEN A. GALLAGHER, J.:

**{¶1}** Defendant-appellant/cross-appellee Lindsey String ("String") and his ex-wife, plaintiff-appellee/cross-appellant Elizabeth Vail ("Vail"), appeal from a decision of the Domestic Relations Division of the Cuyahoga County Court of Common Pleas (1) ordering String to pay Vail $20,596 towards the cost of their daughter's college education plus $4,588 in prejudgment interest, (2) denying Vail's motion to hold String in contempt for previously failing to pay his share of those college expenses and (3) denying the parties' mutual requests for an award of attorney fees and legal expenses.   For the reasons that follow, we affirm the trial court.

**Factual Background and Procedural History**

**The 1993 Agreement**

{¶2} Vail and String were married in 1982 and divorced in 1993. They had one child, Abigail, who was born in 1988. The divorce decree (the "1993 order") incorporated a separation agreement (the "1993 agreement") pursuant to which String was to pay Vail $1,169 (plus a two percent processing fee) per month in child support. String was also to provide medical, dental and life insurance for Abigail (with Vail paying 25 percent and String paying 75 percent of any "extraordinary medical expenses") and to maintain disability and life insurance on his life for Abigail's benefit until she completed college.

{¶3} The 1993 agreement also provided, in relevant part:

The parties agree to share in the cost of an in-State, Ohio public university in a

ratio that reflects their income when Abigail reaches college age. Said costs shall

be room, board, tuition, books and laboratory fees.

{¶4} In 1995, String filed a motion to modify his child support on the ground that his income had "decreased dramatically." The Cuyahoga Job and Family Services — Office of Child Support Services, formerly known as the Cuyahoga County Child Support Enforcement Agency, was granted leave to intervene and filed a motion to show cause based on String's failure to pay child support. The motions were resolved by an agreed judgment entry in April 1997. At that time, String's child support arrearages exceeded $25,000. The trial court found String to be in contempt of the court's 1993 order and sentenced him to 30 days in jail or 200 hours of community service. String could purge his contempt by paying $2,550. The trial court thereafter reduced String's monthly child support obligation to $650 per month (plus a two

percent processing fee), and he was ordered to pay an additional $50 each month toward arrearages.

**The 2002 Agreement**

**{¶5}** In 2002, String filed another motion to modify his child support obligation on the ground that he had experienced "a substantial decrease in income as a result in the change of his employment situation." The motion was resolved by a "settlement agreement" (the "2002 agreement") that was incorporated by reference into an "Agreed Judgment Entry with Child Support Modification" entered December 30, 2002 (the "2002 order"). At the time of the 2002 agreement, String owed Vail approximately $30,000 in child support arrearages. The parties agreed that "[a]s and for payment of all arrearages owed by Lindsey String to [Vail] for child support and in satisfaction of all child support currently owed," String would pay Vail $30,000 (for which he had secured a loan) "contemporaneous with the execution of [the] agreement and the Court's acceptance of an Agreed Child Support Modification." The parties also agreed that (1) Vail would provide health insurance coverage for Abigail and pay the first $1,000 annually of any uninsured or unreimbursed medical or health care costs for Abigail, (2) String and Vail would share equally in any uninsured or unreimbursed medical or health care costs for Abigail beyond the first $1,000 and (3) String's future monthly child support obligation would be reduced to $371. The 2002 agreement also included the following language:

> WHEREAS, the parties desire to resolve any and all matters concerning the support of Abigail without further delay;
>
> * * *
>
> 4.      It is specifically understood by the parties hereto that the foregoing payment by Lindsey String shall hereafter extinguish any and all monies owed by Lindsey String for past due child support payments or any other failure by Lindsey String to perform obligations owed by him with respect

to the support of Abigail, resulting in a zero arrearage as of 12/30/02 as to all child support obligations by Lindsey String.

\* \* \*

7. Entirety of Agreement. This Agreement contains the entire agreement between the parties hereto with respect to the support of Abigail by Lindsey String and Elizabeth String. This agreement supersedes all prior discussions, negotiations and agreements between the parties hereto and may not be modified, except in writing signed by the parties affected thereby.

**Efforts to Enforce the Alleged Obligation to Share in Abigail's College Expenses**

**{¶6}** String's child support obligation terminated in 2007 when Abigail graduated from high school. In the fall of 2007, Abigail began attending college at Miami University of Ohio. She graduated in the spring of 2011. In 2008, Vail filed, pro se, a motion to show cause seeking, among other things, to compel String to pay his share of Abigail's college expenses under the 1993 agreement and order. The amount of college expenses incurred or to be incurred was not specified in the motion. String opposed the motion, asserting that, based on the 2002 agreement, he had no obligation to share in the cost of Abigail's college expenses. In August 2008, Vail voluntarily dismissed her motion to show cause without prejudice.[1]

**{¶7}** In May 2013, Vail's then-counsel sent a letter to String requesting that String contact him to discuss his obligation to share in the cost of Abigail's college expenses or face a motion to show cause. String's counsel responded to the letter, forwarding a copy of String's opposition to Vail's July 2008 motion to show cause and setting forth String's position that "[c]ollege support is off the table" based on the 2002 agreement. String's counsel stated that if

---

[1]Vail claimed that she dismissed the motion after she was involved in a serious equestrian accident for which she was hospitalized for 29 weeks.

Vail "continue[d] to move ahead without showing anything new from the last time she tried, this, I will have to seek sanctions all the way."

{¶8} In October 2016, Vail filed a second motion to show cause based on String's failure to pay his alleged share of Abigail's college expenses and a motion to recover her attorney fees in enforcing the obligation. Vail claimed that Abigail's college expenses totaled $203,074.49, consisting of $144,127.97 in loan balances in Vail's name, $28,946.52 in student loan balances in Abigail's name, $15,000 in out-of-pocket expenses Vail paid for "room and board college expenses not covered by student loans" and $15,000 in out-of-pocket expenses Abigail paid for "room and board college expenses * * * not covered by student loans." Once again, String opposed the motion, asserting that his obligation to share in Abigail's college expenses under the 1993 agreement and order was superseded by the 2002 agreement and order. String also filed a motion for an award of "frivolous conduct and bad faith sanctions," seeking an award of attorney fees and litigation expenses under R.C. 2323.51(B), Ohio common law and Civ.R. 11, and a motion to have Vail declared a vexatious litigator under R.C. 2323.52. String later withdrew his motions for frivolous conduct, bad faith sanctions and to have Vail declared a vexatious litigator, but maintained his request for attorney fees and legal expenses incurred in defending against Vail's motion to show cause.

**The Trial Court's Interpretation of the 2002 Agreement**

{¶9} An evidentiary hearing on the motion to show cause was scheduled for July 17, 2017. Before the hearing began, the trial court issued a judgment entry in which it determined, as a matter of law, that the 2002 agreement and order did not extinguish String's obligation to share in the cost of Abigail's college education as set forth in the 1993 agreement and order. The trial court explained:

The Court finds that the 2002 Agreed Judgment Entry clearly and unambiguously resolved all then-pending issues as to child support. However, as a matter of law, a promise to pay for an adult child's college education is not child support.

An agreement to pay for a child's college education is a gift, "separate and distinct from [a parent's] obligation to support [a child] until they are emancipated. *McMillen v. McMillen*, 5th Dist. Ashland No. 2009-COA-033, 2010-Ohio-2399, ¶ 23; *accord, Jack* [*v. Jack*, 139 Ohio App.3d 814, 824, 741 N.E.2d 1101 (7th Dist. 2000)]; *see, also, Rubins v. Rubins*, 8th Dist. Cuyahoga No. 61937, 1993 Ohio App. LEXIS 1558 [(Mar. 18, 1993)] (children's college trust funds created by terms of separation agreement are property division, not support payment).

The Court finds that the 2003 Agreed Judgment Entry did not abrogate or modify the provisions of the 1993 Separation Agreement regarding payment of the daughter's college expenses.

{¶10} Based on its decision, the trial court held that String was precluded from presenting evidence of, or making further argument regarding, the 2002 agreement and order at the hearing on the motion to show cause. Accordingly, the issues that remained to be decided at the hearing were (1) the cost of Abigail's tuition, room, board, books and laboratory fees at Miami University, (2) Vail and String's income when Abigail "reache[d] college age," (3) whether String should be held in contempt, (4) whether Vail's claim for college expenses was barred by one or more defenses raised by String, including laches and unclean hands, and (5) whether either party was entitled to recover his or her attorney fees and legal expenses from the other. The hearing commenced on July 17, 2017 and continued on October 25 and 26, 2017.

**String's Tender**

{¶11} On August 22, 2017 — between the first and second days of the hearing — String made an "unconditional tender" to Vail, reserving his rights and defenses and without admitting or conceding liability. String tendered $17,783.33 — 22 percent of $80,883.34 — to Vail as the

"full amount that would have been payable by [him] under the 1993 Agreement" for Abigail's tuition, room, board, books and laboratory fees (less the scholarships and grants she received), based on his calculation of his and Vail's income in 2006 and 2007.

{¶12} Three days later, String filed a motion to dismiss Vail's motion to show cause based on his "unconditional tender of the full amount that Mrs. Vail claims is owed under the 1993 Agreement." String argued that the tender purged any alleged contempt and rendered Vail's show cause motion moot as a matter of law.[2] The trial court denied the motion.

**Evidence Presented at the Hearing**

{¶13} Abigail, Vail and String testified at the hearing on Vail's motion to show cause. Vail claimed that the total cost of Abigail's tuition, room, board, books and laboratory fees at Miami University totaled over $200,000.[3] Neither Vail nor Abigail could identify the specific amounts they paid for Abigail's tuition, room, board, books and laboratory fees at Miami University, but they claimed the sums could be deduced from the documents they had produced to support their claim. These documents included (1) a statement of account from the bursar's office, (2) a printout of Abigail's financial aid awards that included a list of scholarships received and loans accepted and a hypothetical "cost of attendance" at Miami University, (3) a summary Abigail prepared estimating her annual room and board expenses, (4) copies of checks Vail sent to Abigail during the time she attended Miami University and (5) various documents relating to school loan payments and balances.

---

[2]It is unclear from the record whether Vail expressly rejected the tender or simply failed to respond to it.

[3]The total varied throughout the course of the hearing. In her October 2016 motion to show cause, Vail claimed the total amount incurred for Abigail's college expenses under the 1993 agreement and order was $203,074.49. In her opening argument, Vail claimed that the total amount was $211,587. In her closing argument, she claimed it was $207,075.77.

**{¶14}** Aside from her 2008 motion to show cause, Vail never requested that String pay his share of Abigail's college expenses while Abigail was in college. Vail claimed that this was because she did not know where String lived at that time. Abigail testified that after her mother filed her 2008 motion to show cause, she met with her paternal uncle and asked him whether her father could assist with her college expenses. Abigail testified that her uncle informed her that her father lacked the resources to do so.

**{¶15}** With respect to the application of the income ratio and the calculation of the parties' proportionate shares of Abigail's college expenses under the 1993 agreement and order, Vail argued that the parties' proportionate shares should be recalculated for each of the four years Abigail attended Miami University. She asserted that because she was self-employed and had "business expenses," her "taxable income" rather than her "gross income" should be used when applying the income ratio. Vail also argued that because String had only produced documentation of his "social security earnings" for the relevant time period and not his tax returns, "the Court should impute an income to him equal to or greater than [Vail's income] for each of the college years."

**{¶16}** String disputed the amount Vail claimed was spent for Abigail's tuition, room, board, books and laboratory fees and argued that the "evidence" Vail presented of Abigail's college expenses — including undocumented "estimates" and testimony that conflicted with the university's documentation of incurred costs — did not satisfy Vail's burden to present competent, credible evidence establishing how much she and Abigail actually paid for Abigail's tuition, room, board, books and laboratory fees with reasonable certainty. String further argued that Vail's claim for reimbursement of Abigail's college expenses was barred by laches, unclean hands, impossibility of performance and String's inability to pay. Based on his review of the

relevant documents, he claimed that the "total includable expenses" under the 1993 agreement and order was, at most, $74,055.58 and that his share of that sum was 22 percent or $16,292.23.

{¶17} String testified that he had been unemployed since December 2016, that he had been living off approximately $25,000 – $30,000 in funds his brother had released to him from a trust that was part of his father's estate and that his brother had also used funds from the trust to pay String's attorney fees. Because String had no source of income beyond the funds given to him by his brother, Vail urged the trial court to "not make a judgment against him because he's probably judgment proof," but rather, to find him in contempt and "order him to be incarcerated until the amount of money that the Court orders would be paid." Vail argued that a contempt finding with a jail sentence would be the only way the trustee would be induced to release additional trust funds to String to pay what he owed Vail under the 1993 agreement and order.

{¶18} Each party also sought to have the other pay the attorney fees and legal expenses that were incurred in connection with the motion to show cause. Each party claimed that the other had needlessly prolonged the litigation, had acted in bad faith, had violated the discovery rules and had engaged in other forms of litigation misconduct, warranting an award of attorney fees against the other party. Vail requested that String be ordered to pay her legal fees and expenses totaling $31,929.20 and String requested that Vail be ordered to pay his legal fees and expenses totaling $98,960.93.

{¶19} On December 19, 2017, the magistrate issued her decision. Both parties submitted written objections and, on April 6, 2018, the trial court issued its judgment entry, ruling on the parties' objections, modifying the magistrate's decision and adopting the magistrate's decision as modified.

**{¶20}** The magistrate found that, based on the documentation provided, Vail and String were obligated to share $93,194 in college expenses. The trial court agreed with the magistrate's conclusion. The trial court further found that, for purpose of allocating college expenses between the parents, Vail's 2007 income was $82,122 and String's 2007 income was $23,298, such that Vail was responsible for 77.9 percent or $72,598 of Abigail's college expenses and String was responsible for 22.1 percent or $20,596 of Abigail's college expenses. The trial court also awarded Vail $4,588 in prejudgment interest from May 31, 2011 to March 31, 2018 under R.C. 1343.03(A), concluding that String's obligation to pay his share of Abigail's college expenses became due on the date Abigail graduated from college. The trial court declined to hold String in contempt for failure to pay his share of Abigail's college expenses because there was no evidence that Vail or Abigail ever presented String with any itemization, explanation or documentation of the college expenses they sought to have him pay before Vail filed her motion to show cause. The trial court also ruled that each party should bear the cost of his or her own attorney fees.

**{¶21}** String appealed, raising the following three assignments of error for review:

FIRST ASSIGNMENT OF ERROR: The Trial Court committed reversible error by ruling that the parties' 2002 Settlement Agreement — which was approved, adopted, and incorporated by the Court into the Court's December 30, 2002 Agreed Judgment Entry — is not fully integrated and does not fully supersede the parties' 1993 Separation Agreement, including the Shared College Expense Provision in the parties' 1993 Separation Agreement.

SECOND ASSIGNMENT OF ERROR: The Trial Court committed reversible error by awarding Plaintiff-Appellee/Cross-Appellant prejudgment interest on the judgment amount from May 31, 2011.

THIRD ASSIGNMENT OF ERROR: The Trial Court committed reversible error by denying Defendant-Appellant/Cross-Appellee's Cross Motion for Attorney Fees and Litigation Expenses, which were incurred to successfully

defend him against Plaintiff-Appellee/Cross-Appellant's October 27, 2016 Motion to Show Cause and Motion for Attorney Fees.

**{¶22}** Vail cross-appealed, raising the following four cross-assignments of error for review:

> FIRST CROSS-ASSIGNMENT OF ERROR: The Trial Court abused its discretion in not finding the Appellant in contempt of court for his failure to pay his share of the parties' adult daughter's college education expenses.

> SECOND CROSS-ASSIGNMENT OF ERROR: The Trial Court erred in not awarding the Appellee a mandatory attorney fee award under Ohio Revised Code Section 3109.05(C).

> THIRD CROSS-ASSIGNMENT OF ERROR: The Trial Court abused its discretion in failing to award the Appellee her reasonable attorney fees and legal expenses under Ohio Revised Code 3105.73(B).

> FOURTH CROSS-ASSIGNMENT OF ERROR: The Trial Court erred and abused its discretion in determining the income ratio and Appellant's resulting payment obligation.

**{¶23}** For clarity and ease of discussion, we consider the parties' assignments of error and cross-assignments of error out of order and together where appropriate.

**Law and Analysis**

### Interpretation of the 1993 and 2002 Agreements and Orders

**{¶24}** In his first assignment of error, String contends that the trial court erred in ordering him to contribute to Abigail's college costs. He contends that the 2002 agreement was "fully integrated" and, therefore, superseded the promise he made in the 1993 agreement to share in the cost of certain of Abigail's college expenses. Vail contends that the 2002 agreement simply resolved the child support arrearage String had owed Vail under the 1993 agreement and order

and did not alter what was, at that time, a future obligation to share in the cost of their then-14-year-old daughter's college education.

{¶25} When determining the rights and obligations of parties under a contract, the court's role is to give effect to the intent of the parties as expressed by the language used in the agreement. *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411 (1987), paragraph one of the syllabus ("The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement."). Contracts are to be read as a whole, giving effect to every part of the agreement. The words used by the parties are to be read in context and given their plain, usual and ordinary meaning "unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents" of the agreement. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph two of the syllabus; *Carroll Weir Funeral Home v. Miller*, 2 Ohio St.2d 189, 192, 207 N.E.2d 747 (1965).

{¶26} The same rules of construction apply to separation agreements and settlement agreements as to any other contract. *See, e.g., Rubins*, 1993 Ohio App. LEXIS 1558, at 6-7; *In re Netotea*, 11th Dist. Trumbull No. 2004-T-0120, 2006-Ohio-1445, ¶ 21; *Countywide Petroleum Co. v. Huntington Capital Invest. Co.*, 8th Dist. Cuyahoga No. 92778, 2010-Ohio-155, ¶ 13; *Ivanov v. Ivanov*, 9th Dist. Summit No. 24998, 2010-Ohio-1963, ¶ 19. Likewise, an agreement incorporated by reference into a court order is subject to the same rules of construction that govern other contracts. *See, e.g., Heskett Ins. Agency, Inc. v. Braunlin*, 4th Dist. Ross No. 11CA3234, 2011-Ohio-6100, ¶ 11; *Campbell v. Campbell*, 5th Dist. Morgan No. 12 AP 0001, 2012-Ohio-3059, ¶ 15; *McMillen*, 2010-Ohio-2399, at ¶ 11.

{¶27} Where contract language is unambiguous, the contract must be enforced as written, i.e., the court may look only to the plain language of the parties' agreement to determine

the parties' rights and obligations. *Acuity, A Mut. Ins. Co. v. Siding & Insulation Co.*, 2016-Ohio-1381, 62 N.E.3d 937, ¶ 9 (8th Dist.); *see also Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, 953 N.E.2d 285, ¶ 37 ("When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties."); *Ward v. Eaton US Holdings*, 8th Dist. Cuyahoga No. 104841, 2017-Ohio-543, ¶ 9 ("A contract that is clear and unambiguous requires no real interpretation or construction and will be given the effect called for by the plain language of the contract."). In other words, where there is no ambiguity, the trial court "may not construe, clarify or interpret the parties' agreement to mean anything outside of that which it specifically states." *Pavlich v. Pavlich*, 9th Dist. Summit No. 22357, 2005-Ohio-3305, ¶ 7. A court cannot, in the name of contract construction, rewrite a contractual provision, add words or restrictions to an agreement or make a different or better agreement than the parties made for themselves. *See, e.g., F & L Ctr. Co. v. H. Goodman, Inc.*, 8th Dist. Cuyahoga No. 83503, 2004-Ohio-5856, ¶ 9.

{¶28} If, on the other hand, contract language is ambiguous, a court may look to extrinsic evidence to determine the parties' intent. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 12. A contract term is ambiguous if its meaning cannot be deciphered from reading the entire agreement or if the term is reasonably susceptible to more than one interpretation. *Willard Constr. Co. v. Olmsted Falls*, 8th Dist. Cuyahoga No. 81551, 2003-Ohio-3018, ¶ 17. An agreement is not ambiguous simply because it may lead to hardship or an inequitable result. *Foster Wheeler Enviresponse v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 362, 678 N.E.2d 519 (1997).

{¶29} "A contract that appears to be a complete and unambiguous statement of the parties' contractual intent is presumed to be an integrated writing." *Bellman v. Am. Internatl.*

*Group*, 113 Ohio St.3d 323, 2007-Ohio-2071, 865 N.E.2d 853, ¶ 11. "'When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.'" *Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 75 Ohio St.3d 433, 440, 662 N.E.2d 1074 (1996), quoting 3 Corbin, *Corbin on Contracts*, Section 573, at 357 (1960).

{¶30} The determination of whether an ambiguity exists, whether a writing is a complete integration and the meaning of unambiguous contract language are all questions of law, which we review de novo. *See, e.g., Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108, 652 N.E.2d 684 (1995); *Com-Corp Indus. v. H&H Mach. Tool Co.*, 8th Dist. Cuyahoga No. 69318, 1996 Ohio App. LEXIS 4795, 5 (Oct. 31, 1996); *Benchmark Contrs., Inc. v. Southgate Mgmt. L.L.C.*, 10th Dist. Franklin Nos. 13AP-390 and 13AP-394, 2014-Ohio-1254, ¶ 40.

{¶31} Applying the principles of construction set forth above, we find that the 2002 agreement is not ambiguous and that it was not intended to abrogate String's obligation to share in the costs of his daughter's college education under the 1993 agreement and order.

{¶32} Not all payments made for the benefit of a child are "support" or "child support." *See, e.g., Basista v. Basista*, 8th Dist. Cuyahoga No. 83532, 2004-Ohio-4078, ¶ 15, 17, fn. 1 ("[A]n order to make a payment on behalf of a non-minor child is not support."); *In re Netotea*, 2006-Ohio-1445, at ¶ 18 (payment of adult child's college expenses did "not represent child support"); *see also Hartlieb v. Hartlieb*, 8th Dist. Cuyahoga No. 64635, 1994 Ohio App. LEXIS 360, 11, fn. 2 (Feb. 3, 1994) (noting that "an agreement to pay college expenses is legally distinct from a court order to pay child support on behalf of a minor"). Although a parent's legal

obligation to support a child does not generally extend to a college education, a parent can agree to provide, or to contribute towards, a college education for his or her child. An agreement by a parent to pay all or part of a child's college education is enforceable by the court if, as here, that obligation is part of a separation agreement that has been incorporated into a divorce decree. *See, e.g., McMillen*, 2010-Ohio-2399, at ¶ 11; *Zanke v. Dunaway*, 7th Dist. Belmont No. 99-BA-26, 2000 Ohio App. LEXIS 4407, 8 (Sept. 22, 2000).

**{¶33}** Although the 2002 agreement contained an integration clause, "a subsequent contract does not supersede or modify unambiguous terms in a preceding contract unless the subsequent agreement specifically evidences an intent to do so." *Trinova Corp. v. Pilkington Bros.*, 70 Ohio St.3d 271, 276-277, 638 N.E.2d 572 (1994). Here, we find no such intent. The integration clause in the 2002 agreement is limited in subject matter. It states that it "contains the entire agreement between the parties hereto *with respect to the support of Abigail* by Lindsey String and Elizabeth String." (Emphasis added.)

**{¶34}** String argues that if the term "support" is given its plain and ordinary meaning, the phrase "support of Abigail" as used in the integration clause of the 2002 agreement must be read (1) to encompass String's prior obligation to contribute to Abigail's college expenses and (2) to have extinguished that obligation. We disagree.

**{¶35}** We cannot read the integration clause in isolation but must read it in context, as part of the 2002 agreement as a whole. Reading the agreement in its entirety, we believe it is clear that the parties intended the 2002 agreement to extinguish String's past due child support obligations, not his future obligation to share in the cost of a college education for his then-14-year-old child.

**{¶36}** Paragraph 1 of the 2002 agreement states that String's $30,000 payment is being made "[a]s and for payment of *all arrearages owed* by Lindsey String to [Vail] *for child support* and *in satisfaction of all child support currently owed*." (Emphasis added.) Paragraph 4 further states that "[i]t is specifically understood by the parties hereto that the foregoing payment by Lindsey String shall hereafter *extinguish* any and all *monies owed* by Lindsey String for *past due child support payments* or any other *failure* by Lindsey String *to perform obligations owed by him with respect to the support of Abigail*, *resulting in a zero arrearage* as of 12/30/02 *as to all child support obligations* by Lindsey String." (Emphasis added.)

**{¶37}** According to the recitals of the 2002 agreement, String's child support arrearages at the time of the 2002 agreement were "approximately $30,000." At the time of the 2002 agreement, there was no "failure" by String with respect to his obligation to pay a portion of Abigail's college expenses. There is no language to suggest that the $30,000 payment was also intended to relieve String of his future obligation to share in Abigail's college expenses.

**{¶38}** Although the 2002 agreement may have constituted an integration as to the matters specifically covered by the agreement, i.e., String's liability for "past due child support payments" and "failure" to perform obligations then "owed by him" "with respect to the support of Abigail," we do not find that it was intended to relieve him of his future obligation to share in the cost of Abigail's college expenses.

**{¶39}** Accordingly, the trial court did not err in determining that the 2002 agreement did not abrogate String's obligation to pay a proportionate share of Abigail's college expenses as set forth in the 1993 agreement and order.

**{¶40}** String's first assignment of error is overruled.

**Refusal to Hold String in Contempt**

**{¶41}** In her first cross-assignment of error, Vail contends that the trial court erred and abused its discretion by failing to find String in contempt for failing to pay his share of Abigail's college expenses.

**{¶42}** A court has authority to enforce its orders through contempt sanctions. Contempt is "a disregard of, or disobedience to, an order or command of judicial authority." *Kapadia v. Kapadia*, 8th Dist. Cuyahoga No. 96910, 2012-Ohio-808, ¶ 26. Disobedience of a lawful court order is punishable as contempt. *See* R.C. 2705.02(A). To support a finding of contempt, the moving party must establish by clear and convincing evidence: (1) the existence of a valid court order, (2) that the offending party had knowledge of the order and (3) that the offending party violated the order. *In re K.B.*, 8th Dist. Cuyahoga No. 97991, 2012-Ohio-5507, ¶ 11. Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus; *Phelps v. Saffian*, 8th Dist. Cuyahoga No. 106475, 2018-Ohio-4329, ¶ 53; *In re Contempt of Tracy Digney*, 2015-Ohio-4278, 45 N.E.3d 650, ¶ 8 (8th Dist.). We review a trial court's decision whether to hold a party in contempt for abuse of discretion. *Phelps* at ¶ 53; *Hissa v. Hissa*, 8th Dist. Cuyahoga Nos. 99498 and 100229, 2014-Ohio-1508, ¶ 21; *Kapadia* at ¶ 26.

**{¶43}** An abuse of discretion occurs where a trial court's decision is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983); *see also Ockunzzi v. Smith*, 8th Dist. Cuyahoga No. 102347, 2015-Ohio-2708, ¶ 9 ("'Abuse of discretion' is a term of art, describing a judgment neither comporting with the record, nor reason."). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *AAAA Ents. Inc. v. River Place Community Urban*

*Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). An abuse of discretion may also be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.).

{¶44} In this case, the magistrate declined to hold String in contempt on the ground that "[t]here was no presentment," i.e., Vail and Abigail "never sent [String] any itemization of bills or explanation of costs." Citing *Hetterick v. Hetterick*, 12th Dist. Brown No. CA2012-02-002, 2013-Ohio-15, ¶ 38-41, and *Hartlieb*, 1994 Ohio App. LEXIS 360, at 5, 9, 13, the trial court agreed. The trial court found that although an order was in place compelling String to pay a proportionate share of certain of Abigail's college expenses and although String was on notice that his daughter was attending college, "there is no evidence he was ever presented with a sum certain due until this litigation commenced." The record supports these findings. There is no evidence that String could have obtained the information necessary to calculate his proportionate share of Abigail's college expenses other than from Vail or Abigail.

{¶45} In *Hetterick*, the Twelfth District reversed the trial court's finding that a father was in contempt for failure to comply with a court order to pay college expenses where there was no clear and convincing evidence that the father was "aware of the order as it related to what exact colleges expenses were due and owing." *Hetterick* at ¶ 38-41. The court held that the daughter "had to have first presented the bills" to the father before it could be said that he knew "what payments he had been ordered to make." *Id.* at ¶ 38-41.

{¶46} In *Hartlieb*, this court reversed a contempt finding based on the father's failure to pay his son's expenses at the Cleveland Institute of Art where a court order existed obligating the father to pay for the "expenses" of his son's education at a "college or a university, or a trade

school or other vocational type of school," but the specific amount he was to pay had not been "reduced to judgment" and the father had not otherwise been "ordered to commence payments on a specified basis." *Hartlieb* at 1-3, 5, 9, 13-14; *see also Ockunzzi*, 2015-Ohio-2708, at ¶ 1, 12-16 (where separation agreement incorporated into divorce decree did not specify date by which husband was obligated to personally pay wife sum from retirement account, trial court erred in concluding that husband was in violation of separation agreement and abused its discretion in finding him to be in contempt of court).

{¶47} Vail argues that *Hetterick* is distinguishable[4] because, unlike the father in that case, String disputed he had an obligation to pay any of Abigail's college expenses. As such, Vail contends prelitigation presentment of invoices or other documentation of Abigail's college expenses to String would have been a "futile act" and should not have precluded a contempt finding. Vail cites no authority in support of her futility argument.

{¶48} On the record before us, we cannot say that the trial court's refusal to hold String in contempt was unreasonable, arbitrary or unconscionable. Accordingly, we overrule Vail's first cross-assignment of error.

**Determination of the Parties' Income Ratio**

{¶49} In her fourth cross-assignment of error, Vail contends that the trial court erred (1) in using only the parties' income in 2007 (rather than the parties' income for all four years Abigail was in college) to calculate the income ratio used in allocating Abigail's college expenses and (2) in calculating the income ratio using an income figure of $82,122 for Vail rather than using her "total income" of $69,013.[5] Vail contends that pursuant to R.C.

---

[4]Vail does not address *Hartlieb* in her briefs.

[5]In addition to the $82,122 in "[w]ages, salaries, tips, etc." listed on line 7 of Vail's 2007 federal income tax

3119.01(C), which defines "income" and "gross income" for purposes of calculating parents' child support obligations, the trial court abused its discretion "when it failed to deduct [Vail's] business expenses from her gross receipts in determining her income for child support purposes."

{¶50} Once again, we disagree. First, the 1993 agreement states that college costs are to be allocated between the parties "in a ratio that reflects their income when Abigail reaches college age." There is no dispute that Abigail "reach[ed] college age" in 2007 after she graduated from high school. Accordingly, the trial court properly determined that it was the parties' income in 2007 that controlled in determining each party's share of Abigail's college expenses.

{¶51} Second, in this case, the trial court was not determining Vail's income for child support purposes. The trial court was determining Vail's income in order to apply the income ratio agreed to by the parties for the purpose of calculating their proportionate shares of Abigail's college expenses. The 1993 agreement and order did not define "income." Accordingly, the trial court did not err in concluding that the statutory definition of income for child support purposes did not apply.

{¶52} In this case, the trial court used $82,122 — the amount listed on line 7 of Vail's 2007 federal income tax return as "wages, salaries, tips, etc." — as Vail's "income" in calculating the parties' proportionate shares of Abigail's college expenses, applying what it determined to be the ordinary meaning of "income," i.e., "money, etc. received in a given period as wages, rent, interest, etc.," citing *Webster's New World Dictionary* 323 (2d Ed.2002) and *Black's Law Dictionary* 766 (7th Ed.1999). The trial court held that "[i]f the parties had

return also lists interest income, dividends, taxable refunds, taxable pension distributions, $32,845 in business losses and $4,074 in "other losses," which together results in "total income" of $69,013 as listed on line 22 of Vail's 2007 federal income tax return.

intended to base the ratio on 'net income' or 'adjusted income[,] they could have used the appropriate adjective." Because "they did not," the trial court properly held that the ordinary meaning of the term applied.

**{¶53}** Further, "[a] party claiming a business expense has the burden of providing suitable documentation to establish the expense." *Ockunzzi v. Ockunzzi*, 8th Dist. Cuyahoga No. 86785, 2006-Ohio-5741, ¶ 53, citing *Flynn v. Sender*, 8th Dist. Cuyahoga No. 84406, 2004-Ohio-6283, ¶ 22-23. A trial court is not required to "blindly accept" all of the expenses a party claims to have deducted on his or her tax returns as ordinary and necessary business expenses. *Id.* Although Vail contends the trial court should have deducted her "legitimate" business expenses in calculating her income for purposes of applying the income ratio, she produced no documentation or other evidence at the hearing — beyond the line item listed on her 2007 federal income tax return — to explain and substantiate her claimed business expenses.[6] Vail's fourth cross-assignment of error is meritless and overruled.

**Prejudgment Interest**

**{¶54}** In his second assignment of error, String challenges the trial court's decision to award Vail $4,588 in prejudgment interest under R.C. 1343.03(A). He contends that his alleged share of Abigail's college expenses did not become "due and payable" under R.C. 1343.03(A) until the trial court issued its judgment entry "directing him to pay Vail the specified calculated amount" because (1) the 1993 agreement and order did not identify when String's share of Abigail's college expenses was due or to whom String was obligated to pay his share of Abigail's college expenses, (2) the amount of the claimed obligation was disputed and remained to be

---

[6]Indeed, Vail's exhibit No. 7, to which she points as evidence of her "total income" of $69,013, includes only the first page of her 2007 federal income tax return. It does not include Schedule C on which her $32,845 in claimed business losses would have been itemized.

calculated and (3) the trial court failed to make "specific factual determinations" regarding "when the claim became due and payable." String contends that the "trigger date" for any interest award should have been April 6, 2018, when the amount of his obligation was established by the trial court.

{¶55} R.C. 1343.03(A) provides that

> when money becomes due and payable upon * * * any settlement between the parties * * * and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of * * * a contract or other transaction, the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code.

The trial court has discretion to determine when money becomes "due and payable" under R.C. 1343.03(A). *See, e.g.*, *Norco Equip. Co. v. Simtrex, Inc.*, 8th Dist. Cuyahoga No. 95914, 2011-Ohio-3688, ¶ 11; *McKay v. McKay*, 2d Dist. Montgomery No. 23702, 2010-Ohio-3348, ¶ 37.

{¶56} In this case, String's obligation to pay certain of Abigail's college expenses arose out of the 1993 order that incorporated the parties' separation agreement. Although the 1993 agreement and order did not specify a date by which String was to pay his share of Abigail's college expenses, given the purpose of the obligation, the trial court reasonably determined that String's obligation arose — at the latest — when Abigail graduated from college. Accordingly, the trial court found that String's obligation to pay his share of Abigail's college expenses became "due" on May 31, 2011.[7] Once Abigail graduated from college, the full cost of Abigail's tuition, room, board, books and laboratory fees would have been known and the specific amount

---

[7]As the trial court explained, because Abigail's actual college graduation date was unknown, it chose May 31, 2011 as the date String's obligation became "due" to approximate Abigail's college graduation date. Although it was undisputed that Abigail graduated from college in May 2011, there is no information in the record as to which day she graduated.

of String's obligation under the 1993 agreement and order, i.e., his proportionate share of those expenses, could have been readily calculated. The fact that an obligation is disputed or has not been calculated does not preclude a finding that an obligation is "due and payable" under R.C. 1343.03(A). *See, e.g., Royal Elec. Constr. v. Ohio State Univ.*, 73 Ohio St.3d 110, 117, 652 N.E.2d 687 (1995); *Persello v. Allstate Ins. Co.*, 7th Dist. Mahoning No. 10 MA 18, 2011-Ohio-3230, ¶ 15. Accordingly, based on the record before us, we cannot say that the trial court abused its discretion in determining that String's obligation to pay his share of Abigail's college expenses became "due and payable" upon Abigail's graduation.

{¶57} String's second assignment of error is overruled.

**Attorney Fees and Legal Expenses**

{¶58} String's third assignment of error and Vail's second and third cross-assignments of error relate to the trial court's denial of the parties' requests for attorney fees and legal expenses.

{¶59} The magistrate declined to award either party their attorney fees and legal expenses, concluding that "[b]oth sides contributed equally to this litigation" — String, "by continuing to deny his obligation to pay college expenses * * * resulting in protracted and costly litigation," and Vail, "by her failure to calculate the obligation, which was difficult due to the lack of authenticated evidence." After considering the parties' arguments and reviewing the docket and hearing transcripts, the trial court agreed with the magistrate and ordered that each party bear the cost of his or her own attorney fees and legal expenses.

{¶60} String contends that the magistrate's denial of his request for attorney fees was "based on an erroneous finding of fact negated by the record" and that the trial court, therefore, abused its discretion in adopting the magistrate's decision on the issue. String disputes that he "contributed equally" to the litigation costs and delays and asserts that the "protracted litigation

and expense" were attributable to Vail's bad faith, her "documented," "sanctionable" misconduct," her "personal attacks and outbursts" and her failure to produce evidence supporting her claims. Vail, in turn, contends that she was entitled to a "mandatory attorney fee award" under R.C. 3109.05(C) and that the trial court abused its discretion in failing to order String to pay her attorney fees because she was the "prevailing party" and obtained a money judgment against String.

### Attorney Fees Under R.C. 3109.05(C)

{¶61} R.C. 3109.05(C) provides:

If any person required to pay child support under an order made under division (A) of this section on or after April 15, 1985, or modified on or after December 1, 1986, is found in contempt of court for failure to make support payments under the order, the court that makes the finding, in addition to any other penalty or remedy imposed, shall assess all court costs arising out of the contempt proceeding against the person and require the person to pay any reasonable attorney's fees of any adverse party, as determined by the court, that arose in relation to the act of contempt and, on or after July 1, 1992, shall assess interest on any unpaid amount of child support pursuant to section 3123.17 of the Revised Code.

{¶62} As explained above, String's obligation to contribute to the cost of Abigail's college education was not "child support," and the trial court properly refused to hold String in contempt for his failure to pay his share of Abigail's college expenses. Accordingly, Vail was not entitled to recover her attorney fees under R.C. 3109.05(C).

### Attorney Fees Under R.C. 3105.73(B)

{¶63} As a general rule, there are "no automatic attorney fees" in domestic relations cases. *Packard v. Mayer-Packard*, 8th Dist. Cuyahoga No. 85189, 2005-Ohio-4392, ¶ 8. Rather, R.C. 3105.73(B) provides that "[i]n any post-decree motion or proceeding that arises out of an action for divorce," a trial court "may award all or part of reasonable attorney's fees and

litigation expenses to either party if the court finds the award equitable." In determining whether such an award is equitable, the trial court "may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate" other than the parties' assets. R.C. 3105.73(B). Whether to award attorney fees under R.C. 3105.73(B) is within the sound discretion of the trial court.

{¶64} Under the facts and circumstances here, we cannot say that the trial court abused its discretion in adopting the magistrate's decision and denying the parties' requests for their attorney fees and legal expenses. It is clear from a review of the docket and the hearing transcripts that both parties were responsible for the voluminous, protracted and, at times, mean-spirited litigation in this case. The trial court's decision not to award attorney fees to either party was not unreasonable, arbitrary or unconscionable. String's third assignment of error and Vail's second and third cross-assignments of error are overruled.

{¶65} Judgment affirmed.

It is ordered that appellee/cross-appellant recover from appellant/cross-appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Domestic Relations Division of the Cuyahoga County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

ANITA LASTER MAYS, P.J., and
MICHELLE SHEEHAN, J., CONCUR