[Cite as *Mayer v. Mayer*, 2020-Ohio-4993.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

MICHAEL J. MAYER,                    :

      Plaintiff-Appellant/          :
      Cross-Appellee,

                     :          No. 109103

      v.

                     :

JANICE A. MAYER,

                     :

      Defendant-Appellee/
      Cross-Appellant.              :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 22, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-14-353473

---

### *Appearances:*

Seifert & Cox, L.L.P., and P. Lynn Seifert, *for appellant and cross-appellee.*

Rosenthal Thurman Lane, L.L.C., Adam J. Thurman, and Brent Cicero, *for appellee and cross-appellant.*

RAYMOND C. HEADEN, J.:

{¶ 1} Appellant/cross-appellee Michael J. Mayer ("Michael") appeals from the underlying decision of the Cuyahoga County Court of Common Pleas, Domestic

Relations Division ("trial court"), on postdecree proceedings, specifically a motion to show cause, a request for attorney fees, and a motion for sanctions filed by his ex-wife, appellee/cross-appellant Janice A. Mayer ("Janice"). Janice cross-appeals from the same judgment. For the reasons that follow, we affirm.

## I.  Factual and Procedural History

{¶ 2}  On April 16, 2015, Michael and Janice's judgment entry of divorce was journalized, and the terms of their separation agreement were ordered into execution. On November 9, 2017, Janice filed a postdecree motion to show cause that alleged Michael's noncompliance with the judgment entry of divorce based upon the following issues:  (1) Michael's failure to pay his share of the tax liability with regard to the Sherwin-Williams stock options proceeds, (2) Michael's failure to reimburse medical expenses to Janice, (3) Michael's failure to reimburse cable expenses to Janice, and (4) Michael's failure to reimburse expenses to Janice relating to the couple's son's vehicle. Janice also filed a motion that sought reimbursement for attorney fees incurred when she attempted to recover the amounts identified in her motion to show cause, as well as a motion for sanctions. Janice's motion for sanctions alleged Michael's failure to disclose a pension constituted financial misconduct. On January 5, 2018, Michael filed a motion to compel reimbursement from Janice based upon her 2015 tax refund.

{¶ 3}  The magistrate held trial on February 7, 2018, May 15, 2018, June 1, 2018, and June 29, 2018, to address the parties' postdecree motions. On December 3, 2018, the magistrate filed her decision that found Michael in contempt

under Janice's motion to show cause due to his failure to pay the following: taxes on the stock proceeds, reimbursement for medical bills, and reimbursement for the residential cable bill. Michael was ordered to pay $28,091, $2,000, and $2,821.32, respectively. The magistrate also granted Janice's motion for attorney fees stemming from the contempt order in the amount of $9,000. The magistrate denied Janice's motion for sanctions filed November 9, 2017, and Michael's motion to compel reimbursement filed on January 5, 2018.

{¶ 4} Both parties filed objections and supplemental objections to the magistrate's decision. Janice's objections were stricken as untimely. On September 23, 2019, the trial judge filed a journal entry that denied Michael's objections and adopted the magistrate's decision in its entirety.

{¶ 5} Michael filed a timely appeal on October 10, 2019, and raised, verbatim, these two assignments of error:

> Assignment of Error #1: The trial court erred and abused its discretion in finding Appellant in Contempt.

> Assignment of Error #2: The trial court erred and abused its discretion in awarding the appellee $9,000.00 in attorney fees.

{¶ 6} On October 21, 2019, Janice filed a timely cross-appeal and presented, verbatim, the following assignments of error:

> Assignment of Error #1: The Trial Court erred and abused its discretion by failing to find Appellant committed financial misconduct by concealing a financial account.

> Assignment of Error #2: The Trial Court erred and abused its discretion by failing to hold Appellant accountable for the truck expenses that he incurred.

Assignment of Error #3: The Trial Court erred and abused its discretion by not awarding Appellee the full amount of attorney fees.

Assignment of Error #4: The Trial Court erred and abused its discretion by not ordering appellant to pay the full Cox Communication fees.

## II. Law and Analysis

### A. Standard of Review

{¶ 7} A court's authority includes enforcing its orders through contempt sanctions. "Contempt of court is defined as disobedience of an order of a court." *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55, 271 N.E.2d 815 (1971), paragraph one of the syllabus. "Disobedience of a lawful court order is punishable as contempt." *Vail v. String*, 8th Dist. Cuyahoga No. 107112, 2019-Ohio-984, ¶ 42. In support of a contempt allegation, the moving party must demonstrate by clear and convincing evidence that (1) a valid court order exists, (2) the offending party had knowledge of the order, and (3) the offending party violated the order. *In re K.B.*, 8th Dist. Cuyahoga No. 97991, 2012-Ohio-5507, ¶ 11. "Clear and convincing evidence is that measure or degree of proof * * * [that] produce[s] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. We apply an abuse of discretion standard when we review a trial court's finding of contempt. *In re K.B.* at ¶ 9.

{¶ 8} A trial court abuses its discretion when it acts unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). An unreasonable decision occurs when no sound reasoning

process supports that decision. *AAAA Ents. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). An abuse of discretion also occurs when a court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.). "When applying the abuse of discretion standard, this court may not substitute its judgment for that of the trial court." *Grisafo v. Hollingshead*, 8th Dist. Cuyahoga No. 107802, 2019-Ohio-3763, ¶ 17, citing *AAAA Ents.* at 161.

### B. Michael's Appeal

**{¶ 9}** "When determining the rights and obligations of parties under a contract, the court's role is to give effect to the intent of the parties as expressed by the language used in the agreement." *Vail*, 8th Dist. Cuyahoga No. 107112, 2019-Ohio-984, at ¶ 25, citing *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411 (1987), paragraph one of the syllabus. A contract should be read as a whole, and every part of the agreement given full effect. *Vail* at ¶ 25. "The words used by the parties are to be read in context and given their plain, usual and ordinary meaning 'unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents' of the agreement." *Id.*, quoting *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph two of the syllabus.

**{¶ 10}** The rules of construction that apply to contracts, as described above, also pertain to separation agreements and settlement agreements. *Vail*, 8th Dist.

Cuyahoga No. 107112, 2019-Ohio-984, at ¶ 26. "Likewise, an agreement incorporated by reference into a court order is subject to the same rules of construction that govern other contracts." *Id.* A clear and unambiguous contract is enforced as written and the court should not look beyond the document's plain language to determine the intent of the parties. *Acuity, A Mut. Ins. Co. v. Siding & Insulation Co.*, 2016-Ohio-1381, 62 N.E.3d 937, ¶ 9 (8th Dist.); *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, 953 N.E.2d 285, ¶ 37 (Where the contract language is clear, a court relies on the written words to identify the intent of the parties.).

{¶ 11} Michael argues in his first assignment of error that the trial court abused its discretion when it found him in contempt of court. In rendering its contempt order in this matter, the trial court took notice of its prior order journalized in the parties' divorce decree, which was recorded on April 16, 2016. The separation agreement executed by Michael and Janice was incorporated into the divorce decree. We look to the plain language of the divorce decree and separation agreement in our review of the parties' assignments of error.

### 1. Reimbursement of Medical Bills

{¶ 12} Michael contends that the trial court abused its discretion when it found him in contempt of court and found Janice entitled to a payment of $2,000 for reimbursement of Janice's medical bills. Michael argued that (1) Janice failed to provide him with the actual medical bills that he needed to submit for

reimbursement from his health savings account ("HSA"), and (2) he paid medical bills of the couple's children thereby reducing the balance in the HSA.

{¶ 13} According to the separation agreement — Section X, Debts — Michael was to pay Janice's medical bills incurred before April 16, 2015. He was to work with Janice, or through counsel, to obtain information needed to process the claims. Janice's medical expenses incurred as of April 16, 2015, were to be paid from the remainder of the HSA, and any subsequent medical expenses were Janice's responsibility:

> X. DEBTS
>
> There are several medical bills that remain unpaid, including some that are presently in collection. Husband shall cooperate with Wife, through counsel if necessary, in order to forward any and all EOBs, bills and any other information necessary from Medical Mutual in order to clarify the bills and to make sure any and all claims have been properly made and paid. Thereafter, any remaining medical expenses incurred as of the date of the signing of this Agreement shall be paid as follows: 1. From the funds currently held in Husband's Health Savings Account (approx. $2,000.00); 2. Should there be additional monies owed after the application of the Health Savings Account, any remaining expenses incurred by and for the benefit of Wife shall be her sole responsibility.
> * * *

(Separation agreement.)

{¶ 14} On May 5, 2015, Janice provided Michael with documentation of outstanding medical expenses totaling $2,835.23 and requested he pay them in compliance with their separation agreement. (Exhibit R.) All but approximately $100 of the medical expenses were incurred prior to execution of the separation agreement. Janice provided medical bills for charges amounting to $953.61. The remaining medical expenses that totaled $1,881.62 were verified with explanation

of benefit letters ("EOBs") and past due notices. (Exhibit R.) Janice also submitted a second grouping of medical bills that totaled over $6,000. (Exhibit T.)

{¶ 15} To process payment of medical bills through Michael's HSA, the HSA administrator required submission of medical bills, rather than EOBs or past due notices. Michael argued that he did not refuse to pay Janice's medical bills, but was unable to do so because she had not provided medical bills for all the expenses. Janice declared at trial that from June 2014, until after the final divorce decree, Michael — who was the primary individual on the health insurance account — had Janice's EOBs sent to his address. (May 15, 2018 hearing tr. at 6.) Janice stated that while she received the medical bills, she needed to also receive the EOBs. Without the EOBs, she was unaware of what bills had been submitted to and processed by the insurance company and, therefore, required payment. Janice paid some of her medical bills personally because collection agencies pursued her for payment. Janice testified the HSA monies were not applied to her outstanding medical bills as required under the terms of the separation agreement. (May 15, 2018 hearing tr. at 20.)

{¶ 16} Michael, through counsel, requested Janice submit the actual medical bills rather than EOBs, past due statements, or Janice's own summary spreadsheets. (June 12, 2018 hearing tr. at 64.) Michael also argued that payment of their children's medical bills depleted the HSA balance and, therefore, he was not obligated to pay Janice's medical bills since less funds were available in the HSA. (June 12, 2018 hearing tr. at 65-66.)

**{¶ 17}** The trial court found Michael in contempt of court for failing to reimburse medical expenses and required him to pay Janice $2,000, the approximate balance in his HSA when the parties entered the separation agreement. While there were many expenses for which Janice did not provide medical bills, such documentation was submitted for more than $2,000 worth of medical expenses. Further, payment of the couple's children's medical expenses was not addressed within Section X of the separation agreement and those payments did not negate Michael's obligation to satisfy Janice's medical bills. Therefore, the trial court did not err and abuse its discretion when it awarded Janice $2,000 for medical bills.

## 2. Reimbursement of Residential Cable Bill

**{¶ 18}** Michael contends that the trial court erred and abused its discretion when it awarded Janice $2,821.32 for her Cox cable bill associated with the family residence.

**{¶ 19}** The separation agreement requires the parties to work together to reduce the cost of the cable bill:

III. Real Estate

4. Husband shall immediately work with Wife to reduce the cost of the Cox Communications Account so long as access to both parties' emails are preserved. At the time of the sale of the marital home, and the closing of the Cox Communications account, both parties' email accounts shall be released to them, respectively. The phone number associated with the marital home shall be released to Wife. Both parties shall cooperated [sic] in order to effectuate the terms of this paragraph.

**{¶ 20}** Janice paid the cable bill from April 16, 2015, the date of the separation agreement, until the house sold in September 2016. (May 15, 2018

hearing tr. at 29-30.) Janice requested reimbursement in the amount of $2,821.32 for cable bills incurred from April 16, 2015, until the sale of the house in September 2016. This figure represented $2,641.50 for unwanted cable services that Janice could not cancel, and $179.82 in fees that Janice paid to maintain her own email account so that Michael could not cancel it. As of September 2016, Janice claimed Michael had not attempted to lower the cost of the cable bill even though he was required to do so under the separation agreement.

{¶ 21} The parties presented widely differing stories regarding the cable bill. According to Janice, the account was listed in Michael's name, and as a result, the cable company was reluctant to modify the account at her request. Janice sought to eliminate services on the bill but she had only limited success without Michael's cooperation. (May 15, 2018 hearing tr. at 32.) Several times, Janice was on the phone with a cable representative who connected Michael on the call and inquired whether he would transfer the account to Janice. (May 15, 2018 hearing tr. at 26; 28.) Each time, Michael refused to release the account. (May 15, 2018 hearing tr. at 26.) One cable employee allowed Janice to slightly reduce the cost of the cable services in late 2015, but she was unable to obtain a minimum package without Michael's consent. (May 15, 2018 hearing tr. at 30; Exhibit U.) In addition to paying for extra, unwanted cable services, Janice paid a monthly fee to sequester her email account so that Michael, as the holder of the cable account, could not terminate her personal email. (May 15, 2018 hearing tr. at 31; Exhibit V.)

{¶ 22} Michael denied that Janice approached him with a proposal to reduce the cable bills or to cancel Cox cable services. (June 12, 2018 hearing tr. at 86.) Michael claimed he contacted the cable company's customer service by phone in 2015, but was unable to gain information regarding the account. (June 12, 2018 hearing tr. at 89-90.) Michael went to the cable company's physical address and allegedly learned that Janice changed the password and PIN, preventing his access to the account. (June 12, 2018 hearing tr. at 91.) Further, Michael claimed he could not transfer the account to Janice's name and still retain his email account. (June 12, 2018 hearing tr. at 91.) Michael maintained that the separation agreement only required him to attempt to lower the cable bill so long as both parties had access to their personal email accounts.[1] Michael argued that once he determined he could not transfer the cable account to Janice and retain both parties' personal email accounts, the agreement did not require him to take any further action with regard to the cable account.

{¶ 23} Michael and Janice provided conflicting testimony regarding the cable account. The trial court observed the parties' behavior, heard their testimony throughout trial, and assessed their credibility. Based upon the trial court's order that found Michael in contempt, we can conclude the trial court found Janice more

_____

[1] Michael admitted that once he learned he could not maintain the parties' personal email accounts and transfer the account to Janice's name, he no longer used his Cox email account, but utilized another email account, and expressed surprise that Janice would pay to maintain her email account: "Why she would pay for an email account is beyond me." (June 12, 2018 hearing tr. at 93).

credible on this issue than Michael. We defer to a trial court's conclusions with regard to the parties' credibility. *Palnik v. Crane*, 8th Dist. Cuyahoga No. 107400, 2019-Ohio-3364, ¶ 65.

{¶ 24} The court found Michael in contempt for not paying $2,821.32 in cable expenses incurred by Janice from the date of the divorce until September 2016. While the divorce decree did not require Michael to pay the cable bill, he was required to cooperate with Janice to reduce the monthly bill which he failed to do. The trial court's award of $2,821.32 for cable expenses was not an abuse of discretion.

### 3. Payment of Taxes Related to Stock Options

{¶ 25} Michael contends that the trial court abused its discretion when it ordered him to pay Janice $28,091 in taxes related to her Sherwin-Williams stock options. Michael argues that his payment of one half of the tax withholdings related to the stock issuance satisfied his tax obligations under the separation agreement.

{¶ 26} According to the separation agreement — Section VI – Stock Options — the parties committed to these terms regarding Janice's 2014 stock proceeds:

> The parties agree that Wife shall be entitled to retain the proceeds from the liquidation of stock options in 2014 in lieu of any award of spousal support from Husband.

> The parties further agree to split the proceeds currently in escrow with Wife's attorney's escrow account equally, after payment of the balance of Health One Credit Union Account (approximately $5,300.00) — Husband shall not further encumber the account. The parties shall receive their share of these funds within seven (7) days of the signing of this agreement and each party shall pay and be responsible for any tax liability resulting for the tax year 2015 from the liquidation of the stock options. Since the stock options are in Wife's name only, she will be

taxed individually with regard to the liquidation. Therefore, Wife shall cause her accountant to prepare an analysis determining the tax liability specifically resulting from the income generated from the stock options no later than March 15, 2016, in order to ultimately determine how much Husband will owe Wife for the tax liability resulting from his one-half share of the stock options no later than April 1, 2016. Each party shall hold the other harmless with respect to the provisions of this paragraph.

(Separation agreement.)

{¶ 27} Since the stocks were held in Janice's name, a stock option check that totaled $167,304 was issued in Janice's name.[2] Taxes in the amount of $63,140.28 were withheld when the stock option check was issued and the parties shared equally in those withholdings. The issue raised by Janice was her 2015 tax liability that was calculated when she prepared and filed her 2015 tax return.

{¶ 28} Janice's 2015 tax return reflected income in the amount of $167,304, the full amount of the stock proceeds. However, Janice only "earned" half of that amount because half of the distribution was paid to Michael. In an ideal situation, Sherwin-Williams would have generated two checks, in equal amounts of $83,652, made payable to Janice and Michael. The parties would have then declared those amounts on their individual income tax returns and their returns would have indicated the parties' actual income for that tax year.

{¶ 29} Here, Janice's only source of income in 2015 was the sale of her Sherwin-Williams stock option. Janice's 2015 income tax return showed income in

_____

[2] Michael owed Janice a number of ancillary amounts that were deducted from his share of the stock option. However, for purposes of this appeal, we do not need to address those deductions and will reference the division of the stock option as if no deductions were made.

the amount of $167,304 and her tax obligation for that year was calculated on that full amount. Janice's 2015 annual income tax would have arguably been less if her tax return reflected income in the amount of $83,652 or one half of the stock option proceeds. Janice was required, under the separation agreement, to employ an accountant to prepare a tax analysis no later than March 15, 2016, that identified how much additional income tax Janice paid since her tax return reflected income of $167,304 rather than $83,652. The separation agreement required Michael to reimburse Janice the amount of additional income tax stated in the tax analysis.

{¶ 30} The record reflects that no tax analysis was prepared and provided to Michael by March 15, 2016. At the contempt hearing, Janice called William Joseph ("Joseph"), an accountant, as a trial witness to testify regarding the tax liability Michael owed to Janice. Joseph testified he was asked to complete a tax analysis that incorporated different parameters than those stated in the separation agreement. (Feb. 7, 2018 hearing tr. at 53-54; 70-71.) His analysis was reflected in Exhibit P. While Joseph once stated the second scenario depicted in his Exhibit P represented the tax liability required under the separation agreement, he testified several times that his analysis did not comport with the separation agreement's requirements. (Feb. 7, 2018 hearing tr. at 51; 52; 65; 70-71; 72.) Based upon Joseph's testimony, we find Exhibit P did not reflect the terms of the separation agreement.

{¶ 31} The terms of the separation agreement with regard to the stock option were not ambiguous and the trial court had to defer to the express terms of the

contract. *Ivanov v. Ivanov*, 9th Dist. Summit No. 24998, 2010-Ohio-1963, ¶ 20. Thus, Joseph's testimony and Exhibit P that represented Joseph's assessment of the parties' tax liability on the stock issuance — and that did not follow the terms of the separation agreement — were inadmissible. The terms of the separation agreement, not an analysis created by Joseph that reflected new terms that Joseph would have incorporated into the separation agreement if he had drafted the document, dictated Michael's tax liability for the stock sale. Accordingly, the trial court could not consider Joseph's testimony or Exhibit P.

{¶ 32} However, as required by the separation agreement, Janice introduced a tax analysis prepared by Charles Rosenbaum ("Rosenbaum"), the tax partner of Joseph. The tax analysis was dated April 15, 2016, and determined that Michael owed Janice $31,418 for his share of her 2015 tax liability. (Exhibit O.) No explanation was provided for the two-year delay during which Janice did not provide Michael with Rosenbaum's tax analysis. While the delay was unusual, it did not adversely impact the terms of the separation agreement. The trial court did not abuse its discretion when it accepted Exhibit O, and found Michael in contempt of court for failure to pay his portion of Janice's 2015 tax liability.

{¶ 33} We note that the magistrate's decision stated that she relied on the accountant's testimony and Exhibit O to support her finding that Michael owed Janice $28,091 for taxes. Exhibit O, Rosenbaum's tax analysis, indicated Michael owed Janice $31,418 for taxes. Scenario two in Joseph's Exhibit P calculated Michael's tax liability at $28,091, which is the amount stated in the magistrate's

decision and the court's order. Michael should have been held responsible for $31,418 in taxes but was ordered to pay only $28,091. "[A]ppellate courts do not have to consider an error which the complaining party could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *Thomas v. Univ. Hosps. of Cleveland*, 8th Dist. Cuyahoga No. 90550, 2008-Ohio-6471, ¶ 37, citing *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 679 N.E.2d 706 (1997). Michael did not raise this issue when he objected to the magistrate's decision, and Michael is now deemed to have waived this argument.

{¶ 34} For the forgoing reasons, Michael's first assignment of error that claims the trial court abused its discretion when it found him in contempt of court for failing to pay Janice's medical bills, cable bills, and tax liability lacks merit and is overruled.

### 4. Award of Attorney Fees

{¶ 35} In his second assignment of error, Michael maintains the trial court erred and abused its discretion when it awarded Janice $9,000 in attorney fees.

{¶ 36} R.C. 3105.73(B) governs the award of attorney fees for postdecree motions and proceedings:

> (B) In any post-decree motion or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding, the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets.

R.C. 3105.73. The statute vests the trial court with discretion to award all or part of reasonable attorney fees so long as the award is equitable. "[A] court's decision on a request for attorney fees will not be overruled unless there is 'no sound reasoning process that would support that decision.'" *Walpole v. Walpole*, 8th Dist. Cuyahoga No. 102409, 2015-Ohio-3238, ¶ 70, quoting *AAAA Ents., Inc.*, 50 Ohio St.3d at 161, 553 N.E.2d 597.

{¶ 37} Per the magistrate's decision journalized on December 3, 2018, she awarded Janice $9,000 in attorney fees related to the three issues on which Janice prevailed on her motion to show cause. Janice presented evidence to authenticate her attorney fees and the trial court was well within its discretion to determine that Janice was entitled to that amount.

{¶ 38} We find the award of attorney fees to Janice was not an abuse of discretion, and accordingly, Michael's second assignment of error is without merit and is overruled.

### C. Janice's Appeal

{¶ 39} Janice filed a cross-appeal naming four assignments of error.

### 1. Failure to Disclose Pension Benefits

{¶ 40} In her first cross-assignment of error, Janice argued that the trial court erred and abused its discretion when it failed to find Michael committed financial misconduct when he concealed a financial asset — his University Hospitals pension ("U.H. pension").

{¶ 41} Janice learned of the U.H. pension when she received a letter at the marital home in June 2015. The letter was addressed to Michael and the return sender was University Hospitals Pension Services. Janice did not immediately turn the letter over to Michael but, through counsel, Michael was asked about the existence of the U.H. pension. Michael had not reported such an asset during the divorce proceedings.

{¶ 42} The record shows that Michael worked for QualChoice, an affiliate of University Hospitals, more than 15 years prior to his divorce proceedings. Michael stated he did not know he held the U.H. pension until he learned of the June 2015 letter. Michael also testified that during the couple's marriage, Janice was responsible for opening the daily mail and filing any necessary documents in the home office thereby suggesting Janice would have known of any prior mailings on the U.H. pension.

{¶ 43} It is uncontroverted that neither Janice, nor her attorney, immediately provided the letter in question to Michael for inspection. Nor did Michael immediately take action to determine the value of the pension. The parties engaged in protracted motion practice, including an appeal to this court in *Mayer v. Mayer*, 8th Dist. Cuyahoga No. 104748, 2017-Ohio-1450, before they resolved the issue. Ultimately, the parties divided the asset equally.

{¶ 44} Janice's allegation of financial misconduct relied heavily on her claim that the letter sent from University Hospitals Pension Services listed Michael's marital status as single. Michael and Janice were married when he previously

worked for QualChoice. According to Janice, the letter's reference to Michael's single status confirmed that Michael knew about the pension and contacted the administrator, after execution of the separation agreement, to change his status from married to single. Michael denied any knowledge of the U.H. pension prior to receipt of the June 2015 letter, and denied he changed his marriage status with the pension administrator. Michael proposed the listing of his status as single, rather than married, was a clerical error.

{¶ 45} Per R.C. 3105.171(E)(4), a court evaluating a claim of financial misconduct has discretion to determine whether the alleged act should result in damages to the party who was subject to the misconduct. *Wojanowski v. Wojanowski*, 8th Dist. Cuyahoga No. 103695, 2017-Ohio-11, ¶ 17, citing *Trolli v. Trolli*, 8th Dist. Cuyahoga No. 101980, 2015-Ohio-4487, ¶ 50-51.

{¶ 46} Here, the trial court found Michael's testimony credible and determined he was unaware of this asset until Janice notified him about the June 2015 letter. We defer to the trial court's evaluation of Michael's credibility and we find no abuse of discretion in the trial court's determination that Michael did not commit financial misconduct. Accordingly, Janice's first cross-assignment of error lacks merit and is overruled.

### 2. Reimbursement of Son's Vehicle's Expenses

{¶ 47} Janice argues in her second cross-assignment of error that the trial court erred and abused its discretion when it did not hold Michael accountable for expenses Janice incurred for their son's vehicle.

**{¶ 48}** The separation agreement — Section IV – Automobiles — states, in pertinent part:

> Wife shall retain the 2006 Toyota Sienna automobile and 2006 Dodge Ram as her sole and exclusive property, free and clear from any claim by Husband. Wife shall be responsible for any other future financial obligations related to said vehicles other than what is set forth herein and further, she shall indemnify, save, and hold harmless thereon.
>
> * * *

(Separation agreement.)

**{¶ 49}** Following the April 16, 2015 separation agreement, Michael did not transfer title to the 2006 Dodge Ram until July 2015. Janice contends that Michael should be responsible for expenses that she incurred for the Dodge Ram truck prior to and after execution of the separation agreement, until Michael transferred title of the vehicle. Janice sought expenses totaling $15,154.37 plus interest. (Exhibit Z.) Michael argues that the truck expenses were credit card debt, which were Janice's own responsibility per the separation agreement.

**{¶ 50}** The separation agreement does not require Michael to pay any expenses related to the Dodge Ram and specifically states Janice is responsible for related future financial obligations. Janice's financial responsibility for truck expenses was not triggered by the transfer of the vehicle's title. If Janice wanted to implement that stipulation, she needed to incorporate it into the separation agreement. The trial court did not err or abuse its discretion when it prevented Janice from introducing testimony regarding the Dodge Ram expenses because Michael was not responsible for those expenses under the separation agreement.

{¶ 51} For the foregoing reasons, Janice's second cross-assignment of error lacks merit and is overruled.

### 3. Award of Attorney Fees

{¶ 52} In her third cross-assignment of error, Janice argues that the trial court erred when it failed to award her the full amount of attorney fees requested, in the amount of $17,985.70.

{¶ 53} "A trial court has broad discretion in the award of attorney fees." *Hissa v. Hissa*, 8th Dist. Cuyahoga Nos. 103493 and 103536, 2016-Ohio-4714, ¶ 33, citing *Birath v. Birath*, 53 Ohio App.3d 31, 39, 558 N.E.2d 63 (10th Dist.1988).

{¶ 54} Janice was not successful on all the issues she raised in her motion for contempt and, as a result, it was reasonable that the court chose not to award all of the requested attorney fees. Upon our review of the record, we conclude that the trial court's decision not to award Janice the full amount of the requested attorney fees was neither unreasonable, arbitrary, nor unconscionable. Thus, Janice's third cross-assignment of error lacks merit and is overruled.

### 4. Reimbursement of Residential Cable Bill

{¶ 55} Janice argues in her fourth cross-assignment of error that Michael should have reimbursed her $4,800 for all of the cable fees she incurred from April 2015 through September 2016.

{¶ 56} The separation agreement did not require Michael to pay the monthly cable bill. The separation agreement required Michael to work with Janice to reduce the cable bill. The trial court ordered Michael to reimburse Janice for additional

cable fees she incurred between April 2015 through September 2016, due to Michael's failure to cooperate with Janice and to facilitate a reduction in the monthly cable bill. The trial court did not err when it found Michael responsible for only $2,800 worth of cable services that Janice sought, unsuccessfully, to eliminate from her monthly bill.

{¶ 57} For the foregoing reasons, Janice's fourth cross-assignment of error lacks merit and is overruled.

{¶ 58} Judgment affirmed.

It is ordered that appellee/cross-appellant recover of appellant/cross-appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
RAYMOND C. HEADEN, JUDGE

EILEEN A. GALLAGHER, P.J., and
MARY EILEEN KILBANE, J., CONCUR